**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292676)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
(415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SARAWUDH TONGPALAD, individual and on behalf of all others similarly situated,

Plaintiff,

vs.

FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., a Nevada Corporation; and DOES 1 through 100, inclusive,

Defendants.

**CLASS ACTION**

**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**

**(1) CALIFORNIA CONSUMER PRIVACY ACT § 1798.150;**
**(2) CALIFORNIA PRIVACY RIGHTS ACT;**
**(3) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*;**

**DEMAND FOR JURY TRIAL**

Plaintiff Sarawudh Tongpalad ("Plaintiff"), individually and on behalf of classes of similarly situated individuals (defined below), bring this action against Defendant Farmers Insurance Exchange, Farmers Group, Inc. ("Farmers Insurance" and/or "Defendant") and Does 1 through 100 (collectively, "Defendants").

## I.

## SUMMARY OF THE CASE

1. On or about August 22, 2025, Plaintiff received a notice from Defendant informing her that "of a security incident that involved some of your personal information." ("Notice").

2. Plaintiff is a policyholder with Farmers Insurance ("Account"). As part of the application process for her policy and the associated account, Plaintiff was required to provide personal information to Defendant.

3. Defendant's clients and customers, including Plaintiff, trust that their Personally Identifiable Information ("PII") will be maintained in a secure manner and kept from unauthorized disclosure to third parties as outlined in Farmers Insurance's Privacy Policy.[1]

4. According to its Notice to affected customers,[2] "On May 30, 2025, one of Farmers' third-party vendors alerted Farmers to suspicious activity involving an unauthorized actor accessing one of the vendor's databases containing Farmers' customer information... The investigation determined that the unauthorized actor accessed the vendor's database on May 29, 2025, and acquired certain data…On July 24, 2025, the review determined that some personal information was subject to unauthorized access and acquisition...your personal information were involved." (the "Data Breach").

---

[1] https://www.farmers.com/disclaimer/privacy-policy/ last accessed on September 26, 2025.

[2] Defendant's notice dated August 22, 2025 was sent by mail. It included a phone number for customer inquiries, as required by Cal. Civ. Code section 1798.82(a). Section 1798.82(a) requires businesses to notify "any California resident (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the person or business that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system."

5. The Notice further stated that the customer information disclosed in the Data Breach included a combination of the following PII: driver's license number, date of birth, and the last 4 of Social Security number. Moreover, according to Defendant's own "Notice of Security Incident"[3] published on its website, Farmers determined that certain personal information of a select population of its customers was subject to unauthorized access and acquisition. The compromised "database contained names, addresses, dates of birth, driver's license numbers, and/or the last four digits of Social Security numbers." Although Defendant claims there is no evidence that additional personal information was accessed, the very categories of data it admits were exposed are quintessential identifiers that enable identity theft and financial fraud, and Defendant's acknowledgment of their exposure underscores both the seriousness of the incident and the heightened risks now facing Plaintiff and the Class.

6. The PII disclosed in the Data Breach is protected by the California Consumer Privacy Act of 2018 ("CCPA"). For purposes of CCPA Section 1798.150, "personal information" is defined as an individual's first name or first initial and his or her last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: (1) social security number; (2) driver's license number or California ID card number; (3) account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account; (4) medical information; and/or (5) health insurance information.[4]

7. Here, unencrypted names were revealed along with account information that would permit access to individuals' financial and other accounts across the web. In combination, those pieces of PII could permit access to other accounts using similar or the same information, including financial accounts.

8. When nonencrypted and nonredacted personal information defined in Section

---

[3] https://www.farmers.com/content/dam/farmers/marketing/digital/aem/pdfs/disclosures/notice-of-incident.pdf last accessed on September 26, 2025

[4] In other sections of the CCPA, "personal information" is defined more broadly as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household."

1798.150 is subjected to unauthorized access and exfiltration, theft, or disclosure by a company that has failed to maintain reasonable security measures, the CCPA explicitly authorizes private litigants to bring individual or class action claims.[5]

9. Defendants have failed to maintain reasonable security controls and systems appropriate for the nature of the PII it maintains as required by the CCPA and other common and statutory laws. According to one blogger for the International Association for Privacy Professionals, "encryption is a security strategy …[that] protects your organization from scenarios like a devastating breach where, if the adversary were to gain access to your servers, the data stored would be of no use to them, unless they have the encryption key. It's an all-or-nothing security posture: You either get to see the data unencrypted, or you don't."[6] "[O]rganizations should encrypt their data on a disk as a required security measure. But they must not stop there. In fact, the CCPA is clear that they should go further." *Id.*

10. Defendants also failed to maintain proper measures to detect hacking and intrusion. As explained below, Defendants should have had breach detection protocols in place. If they had, they could have learned of the breach and alerted customers much sooner.

11. Nearly all "best practices" security frameworks, e.g., the U.S. National Institute of Standards and Technology's (NIST) Special Publication 800, require log aggregation, log monitoring, and automated intrusion detection systems that alert a company of unauthorized access or the anomalous use of hacked user accounts. Had Defendants properly deployed those industry standard systems, the breach might not have occurred or, if it had, Defendants would have promptly detected it.

12. Because (i) Defendants have failed to maintain reasonable security measures, and (ii) Defendants disclosed their customers' unencrypted names and Social Security numbers, the CCPA explicitly permits an individual or class action under Section 1798.150 for this Data Breach.

---

[5] CCPA Section 1798.192 also states: "Any provision of a contract or agreement of any kind that purports to waive or limit in any way a consumer's rights under this title, including, but not limited to, any right to a remedy or means of enforcement, shall be deemed contrary to public policy and shall be void and unenforceable."

[6] Tuow, Steve, Encryption, redaction and the CCPA, available at https://iapp.org/news/a/encryption-redaction-and-the-ccpa/ (last accessed July 14, 2022).

13. In the Notice, Defendant claims that "After learning of the activity, Farmers immediately launched a comprehensive investigation to determine the nature and scope of the Incident and notified appropriate law enforcement authorities." But the viewing, theft, and attempted sale of California consumers' PII on the dark web has already occurred and cannot be cured.

14. Defendants disregarded Plaintiff's and Class members' privacy rights in the PII by, among other things, (i) failing to implement reasonable security safeguards to prevent or timely detect the Data Breach; (ii) failing to detect the Data Breach when or after it occurred; (iii) failing to disclose to customers that it did not implement such reasonable security safeguards; and (iv) failing to provide sufficiently prompt, thorough, and accurate notice and information about the Data Breach.

15. As a result of the Data Breach, Plaintiff and the Classes have been injured in several ways. Plaintiff and Class members (i) now know or should know that their PII was hacked and put up for sale on the dark web for purchase by malicious actors; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the benefit of their bargain with Defendant regarding data privacy.

16. Plaintiff and Class members are therefore (i) entitled to actual and statutory damages under the CCPA and other laws, (ii) have incurred actual and concrete damages as a result of the unauthorized sale of their PII to malicious actors on the dark web, and (iii) face ongoing risks of disclosure of their PII in subsequent data breaches because Defendants have not demonstrated that they have implemented reasonable security systems and procedures. Plaintiff and Class members have a significant interest in the protection and safe storage of their PII. They are therefore entitled to declaratory, injunctive, and other equitable relief necessary to protect their PII. This includes, but is not limited to, an order compelling Defendants to adopt reasonable security procedures and practices to safeguard customers' PII and prevent future data breaches.

17. This is likewise a class action alleging violations of the California Privacy Rights Act ("CPRA"), which expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security

measures, and limit data retention.

18. This is also a consumer class complaint seeking restitution of all monies unlawfully earned by Defendants for the access to their Systems. Defendants have consistently failed to inform the public, including Plaintiff, that the personal information they provided when they accessed the Systems will be disclosed by Defendants to third parties without their consent and authorization.

## II.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiff, and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs. This Court has jurisdiction over Defendant because Defendant operates in and directs commerce to this District. Defendant intentionally avails itself of the markets within this District, rendering the exercise of jurisdiction by this Court just and proper. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this District.

## III.

## PARTIES

### A. PLAINTIFF

20. Plaintiff Sarawudh Tongpalad is a natural person and a permanent, non-transitory resident of the State of California. Like millions of others, Plaintiff provided and entrusted her PII to Defendants. On or about August 22, 2025, Plaintiff received a Notice from Defendant informing her that her PII had been accessed by malicious third parties without authorization. Because of the Data Breach, Plaintiff has continuously monitored her various accounts to detect misuse of her PII and will continue to expend time to protect against fraudulent use or sale of her PII.

### B. DEFENDANT

21. Defendant Farmers Insurance Exchange, Farmers Group, Inc. is a Nevada Corporation with its principal place of business at 6301 Owensmouth Ave, Woodland Hills, CA 91367. Defendant is an insurance service company. The acts alleged to have been done by

Defendants were authorized, ordered, or performed by its directors, officers, managers, agents, employees, or representatives in the course of their employment and while actively engaged in the management of Defendants' affairs. Defendants, through their subsidiaries, divisions, affiliates and agents, operated as a single unified entity with each acting as the agent or joint-venturer of or for the others regarding the acts, violations, and common course of conduct alleged herein and under the authority and apparent authority of parent entities, principals and controlling parties.

**C. DOE DEFENDANTS**

22. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sue the Defendants by such fictitious names under the Code of Civil Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known. Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

**D. AGENCY/AIDING AND ABETTING**

23. At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

24. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its

conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## IV.

## FACTUAL BACKGROUND

### A. DEFENDANTS' RELEVANT PRIVACY POLICIES

25. Plaintiff is a customer of and has maintained insurance policies with Farmers Insurance, during which time Plaintiff was required to provide Defendant with personal and financial information as a condition of obtaining insurance coverage.

26. On or about August 22, 2025, Farmers Insurance first informed Plaintiff Tongpalad (and other affected customers) of a serious data security incident involving unauthorized access to Farmers' customer data. According to the Notice from Farmers, Farmers was providing broad notice "of a security incident that involved some of your personal information." In the Notice, Farmers acknowledged that an unauthorized actor had gained access to systems containing customers' personal information without authorization.

27. According to the Notice, "On May 30, 2025, one of Farmers' third-party vendors alerted Farmers to suspicious activity involving an unauthorized actor accessing one of the vendor's databases containing Farmers' customer information... The investigation determined that the unauthorized actor accessed the vendor's database on May 29, 2025, and acquired certain data… On July 24, 2025, the review determined that some personal information was subject to unauthorized access and acquisition...your personal information were involved."

28. The Notice further stated that the customer information disclosed in the Data Breach included a combination of the following PII: driver's license number, date of birth, and the last 4 of Social Security number. Moreover, according to Defendant's own "Notice of Security Incident"[7] published on its website, Farmers determined that certain personal information of a select population of its customers was subject to unauthorized access and acquisition. The compromised "database contained names, addresses, dates of birth, driver's license numbers, and/or the last four digits of

---

[7] https://www.farmers.com/content/dam/farmers/marketing/digital/aem/pdfs/disclosures/notice-of-incident.pdf last accessed on September 26, 2025

Social Security numbers." Although Defendant claims there is no evidence that additional personal information was accessed, the very categories of data it admits were exposed are quintessential identifiers that enable identity theft and financial fraud, and Defendant's acknowledgment of their exposure underscores both the seriousness of the incident and the heightened risks now facing Plaintiff and the Class.

29. Defendant's failure to provide reasonable security for Plaintiff's personal information resulted in the unauthorized access and exfiltration, theft, or disclosure of this information.

30. It was only in or about August 22, 2025, when Defendant disclosed the Data Breach to Plaintiff via mail.

31. Defendant's Privacy Policy is available on its website and provides customers with terms and conditions regarding the treatment of their PII. It states:

> **Information We Collect**
> We collect and maintain personal information to provide you with coverage, products or services and to service your account.
>
> We collect certain information ("nonpublic personal information") about you and the members of your household ("you") from the following sources:
>
> - Information you provide on applications or other forms, such as your social security number, assets, income, and property information;
> - Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums, and payment history;
> - Information from your visits to farmers.com or other websites we operate, use of our mobile sites and application, use of our social media sites, and interaction with our online advertisements; and
> - Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and
> - If you obtain a life, long-term care or disability product, information we receive from you, medical professionals who have provided care to you and insurance support organizations, regarding your health.
>
> **How We Protect Your Information**
> We restrict access to personal information about you to individuals, such as our employees and agents, who provide you with our products and services. We require individuals with access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that

> comply with applicable regulatory standards to guard your nonpublic personal information. We do not disclose any nonpublic personal information about you except as described in this notice.
>
> **Information We Disclose**
> We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and to other third parties, all as permitted by law. Many employers, benefit plans or plan sponsors restrict the information that can be shared about their employees or members by companies that provide them with products or services. If you have a relationship with Farmers or one of its affiliates as a result of products or services provided through an employer, benefit plan or plan sponsor, we will follow the privacy restrictions of that organization.
>
> We are permitted to disclose personal health information:
> (1) to process your transaction with us, for instance, to determine eligibility for coverage, to process claims or to prevent fraud;
> (2) with your written authorization, and
> (3) otherwise as permitted by law.[8]

32. Defendant's Privacy Policy assures its customers their PII is secure. By failing to protect its customers' PII through reasonable security measures, Defendant has shared personal information with others for purposes other than the services customers requested without customers' permission.

33. Despite these assurances and the significant benefit Defendant receives by collecting and maintaining its customers' PII, Defendant did not adopt reasonable data measures and systems to protect customers' PII or prevent and detect unauthorized access to this data. Defendant maintains a business that collects hundreds of millions of dollars from customers each year; it has the resources to adopt reasonable protections and should have known to do so. The protections afforded by implementing the best practices delineated in modern security practices frameworks are not unduly expensive for a company like Defendant and are commonly deployed by commercial businesses throughout the world. It knew or should have known that its systems' inadequate protections placed its customers at significant risk of having their PII stolen by hackers.

[8] https://www.farmers.com/disclaimer/privacy-policy/ last accessed on September 26, 2025.

34. Defendant requires its customers to disclose their PII in order to provide services. It collects, retains, and uses that data to maximize profits through predictive marketing and other targeted marketing practices. By collecting, using, and deriving significant benefit from customers' PII, Defendant had a legal duty to take reasonable steps to protect this information from disclosure. As discussed below, Defendants also had a legal duty to take reasonable steps to protect customers' PII under applicable federal and state statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the California Consumer Protection Act of 2018 (the "CCPA"), Cal. Civ. Code § 1798, et seq. FTC Security Guidelines Concerning PII, and the CPRA.

35. The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches.

36. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendants. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

37. In 2016, the FTC provided updated security guidelines in a publication titled Protecting Personal Information: A Guide for Business. Under these guidelines, companies should protect consumer information they keep; limit the sensitive consumer information they keep; encrypt sensitive information sent to third parties or stored on computer networks; identify and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay particular attention to the security of web applications – the software used to inform visitors to a company's website and to retrieve information from the visitors.

38. The FTC recommends that businesses do not maintain payment card information beyond the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

39. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

40. The FTC has brought several actions to enforce Section 5 of the FTC Act. According to its website:

> When companies tell consumers they will safeguard their personal information, the FTC can and does take law enforcement action to make sure that companies live up these promises. The FTC has brought legal actions against organizations that have violated consumers' privacy rights, or misled them by failing to maintain security for sensitive consumer information, or caused substantial consumer injury. In many of these cases, the FTC has charged the defendants with violating Section 5 of the FTC Act, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.

41. Defendant was aware or should have been aware of its obligations to protect its customers' PII and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers from unauthorized access. Among other violations, Defendant violated its obligations under Section 5 of the FTC Act.

42. For example, Defendant's belated notification of the Data Breach to Plaintiff and the Class indicates that it does not use an adequate intrusion detection system to immediately expose a data breach; does not sufficiently monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; does not properly monitor for the transmission of large amounts of data from the system; and does not maintain an appropriate plan to respond effectively to a data breach in the event one occurs.

**B. THE DATA BREACH HARMED PLAINTIFF AND CLASS MEMBERS**

43. Plaintiff and Class members have suffered and will continue to suffer harm because of the Data Breach.

44. Plaintiff and Class members face an imminent risk of injury of identity theft and related cybercrimes due to the Data Breach. Once data is stolen, malicious actors will either exploit the data for profit themselves or sell the data on the dark web to someone who intends to exploit the

data for profit. Hackers would not incur the time and effort to steal PII and then risk prosecution by listing it for sale on the dark web if the PII was not valuable to malicious actors.

45. The dark web helps ensure users' privacy by effectively hiding server or IP details from the public. Users need special software to access the dark web. Most websites on the dark web are not directly accessible via traditional searches on common search engines and are therefore accessible only by users who know the addresses for those websites.

46. Malicious actors use PII to gain access to Class members' digital life, including bank accounts, social media, and credit card details. During that process, hackers can harvest other sensitive data from the victim's accounts, including personal information of family, friends, and colleagues.

47. Malicious actors can also use Class members' PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."

48. The PII accessed in the Data Breach therefore has significant value to the hackers that have already sold or attempted to sell that information and may do so again. In fact, names, mailing and email addresses, dates of birth, phone numbers, account information, and purchasing preferences are among the most valuable pieces of information for hackers.

49. The PII accessed in the Data Breach is also very valuable to Defendant. Defendant collects, retains, and uses this information to increase profits through predictive and other targeted marketing campaigns. Defendant's customers value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendant, provided PII, and/or paid the same prices for Defendant's services had they known Defendant did not implement reasonable security measures to protect their PII. Customers expect that Defendant's premium prices incorporate Defendant's operating costs, including costs to implement reasonable security measures to protect customers' personal information.

50. The PII accessed in the Data Breach is also very valuable to Plaintiff and Class members. Consumers often exchange personal information for goods and services. For example,

consumers often exchange their personal information for access to Wi-Fi in places like airports and coffee shops. Likewise, consumers often trade their names and email addresses for special discounts (e.g., sign-up coupons exchanged for email addresses). Consumers use their unique and valuable PII to access the financial sector, including when obtaining a mortgage, credit card, or business loan. As a result of the Data Breach, Plaintiff and Class members' PII has been compromised and lost significant value.

51. Plaintiff and Class members will face a risk of injury due to the Data Breach for years to come. Malicious actors often wait months or years to use the personal information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen personal information, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Finally, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. For example, victims rarely know that certain accounts have been opened in their name until contacted by collections agencies. Plaintiff and Class members will therefore need to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them.

52. Plaintiff and Class members have and will continue to expend significant time and money to reduce the risk of and protect against identity theft caused by the Data Breach. According to the 2018 IBM/Ponemon Institute study, the average cost of a data breach in the United States is $242 per victim and roughly $8 million per breach for companies. Where a consumer becomes a victim of identity theft and suffers $1 or more in direct or indirect losses, the average cost to the consumer is $1,343. 63. Even when reimbursed for money stolen due to a data breach, consumers are not made whole because the reimbursement fails to compensate for the significant time and money required to repair the impact of the fraud. On average, victims of identity theft spend 7 hours fixing issues caused by the identity theft. In some instances, victims spend more than 1,000 hours trying to fix these issues.

53. Victims of identity theft also experience harm beyond economic effects. According to a 2018 study by the Identity Theft Resource Center, 32% of identity theft victims experienced

negative effects at work (either with their boss or coworkers) and 8% experienced negative effects at school (either with school officials or other students).

54. The U.S. Government Accountability Office likewise determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."

## C. DEFENDANTS FAILED TO TAKE REASONABLE STEPS TO PROTECT ITS CUSTOMERS' PII

55. Defendant requires its customers to disclose a significant amount of highly personal and confidential PII to provide them with the Services. Defendants collect, store, and use this data to maximize profits.

56. Defendant has legal duties to protect its customers' PII by implementing reasonable security features. This duty is further defined by federal and state guidelines and industry norms.

57. Defendants breached their duties by failing to implement reasonable safeguards to ensure Plaintiff's and Class members' PII was adequately protected. As a direct and proximate result of this breach of duty, the Data Breach occurred, and Plaintiff and Class members were harmed. Plaintiff and Class members did not consent to having their PII disclosed to any third party, much less a malicious hacker who would sell it on the dark web.

58. The Data Breach was a reasonably foreseeable consequence of Defendants' inadequate security systems. Defendant has the resources to implement reasonable security systems to prevent or limit damage from data breaches. Even so, it failed to properly invest in its data security. Had Defendant implemented reasonable data security systems and procedures (i.e., followed guidelines from industry experts and state and federal governments), then it likely could have prevented hackers from infiltrating its systems and accessing its customers' PII.

59. Defendant's failure to implement reasonable security systems has caused Plaintiff and Class members to suffer and continue to suffer harm that adversely impact Plaintiff and Class members economically, emotionally, and/or socially. As discussed above, Plaintiff and Class members now face an imminent and ongoing threat of identity theft and resulting harm. These

individuals now must spend significant time and money to continuously monitor their accounts and credit scores to limit potential adverse effects of the Data Breach regardless of whether any Class member ultimately falls victim to identity theft.

60. Defendants also had a duty to timely discover the Data Breach and notify Plaintiff and Class members that their PII had been compromised. Defendants breached this duty by failing to use reasonable intrusion detection measures to identify the Data Breach when it occurred, and then, once it learned of the Data Breach, failing to inform affected customers for three months. Farmers Insurance unreasonably delayed notifying Plaintiff and the Class about the Data Breach. Farmers became aware of the breach on or about May 30, 2025, yet did not begin informing affected customers until late August 2025. This nearly three-month delay in disclosure was inconsistent with industry best practices and applicable law, and it prevented Plaintiff and Class Members from taking prompt measures to protect themselves. For three months between the Data Breach and Defendant's notification to customers, customers' PII was in the hands of hackers and for sale to malicious actors.

61. In sum, Plaintiff and Class members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) diminution in value of their PII; (iv) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (v) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; and (vi) overpayments to Defendant for services purchased, as Plaintiff and Class members reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII, which was not the case.

62. Defendant has failed to recognize the impact of the Data Breach on its customers; it merely offered impacted customers complimentary identity theft and credit monitoring services. However, as discussed above, the threat of identity theft and fraud from the Data Breach will extend for years and cost Plaintiff and the Classes significant time and effort. Defendant's Notice to affected customers acknowledges this, encouraging customers "to remain vigilant against instances of identity theft and fraud by reviewing financial account statements and credit reports for any

anomalies, and to notify their financial institution of any unauthorized transactions or suspected identity theft."

63. Plaintiff and Class members therefore have a significant and cognizable interest in obtaining equitable relief (in addition to any monetary damages) that protects them from these long-term threats. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

## V.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action under Code of Civil Procedure §382, individually and on behalf of all other persons similarly situated. The putative class that Class Representatives seek to represent is composed of: All persons residing in California whose PII was compromised in the Data Breach (hereinafter the "Class").

65. Excluded from the Class are the natural persons who are directors, and officers, of the Defendants. Class Representatives expressly disclaim that they are seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

66. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiff at this time, this can be ascertained through appropriate discovery.

67. Plaintiff's claims are typical of the claims of the members of the Class. All Class members were subject to the Data Breach and had their PII exposed or accessed in the Data Breach. Likewise, Defendants' misconduct impacted all Class members in the same manner.

68. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with Class members' interests because they were subject to the same Data Breach as Class members and face similar threats as a result of the Data Breach. Plaintiff has also retained competent counsel with significant experience litigating complex class actions.

69. Defendants have acted in a manner that applies generally to Plaintiff and all Class members. Each Class member has been similarly impacted by Defendants' failure to maintain reasonable security procedures and practices to protect customers' PII, as well as Defendants' failure

to timely alert affected customers to the Data Breach.

70. Common questions of law and fact predominate over questions affecting individual Class members. The common questions of fact and law include:

(a) whether Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiffs' and Class members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information;

(b) whether Defendants violated the CPRA by failing to prevent Plaintiffs' and Class members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information;

(b) whether Defendants' misconduct identified herein amounts to a violation of Cal. Bus. & Prof. Code § 17200, et seq.;

(c) whether Defendants owed Plaintiffs and Class members a duty to implement and maintain reasonable security procedures and practices to protect their personal information;

(d) whether Defendants acted negligently in connection with the monitoring and/or protection of Plaintiffs' and Class members' PII;

(e) whether Defendants adequately addressed and fixed vulnerabilities that permitted the Data Beach to occur;

(f) whether Defendants breached their duty to implement reasonable security systems to protect Plaintiffs' and the Class members' PII;

(g) whether Defendants' breach of their duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiffs and Class members;

(h) whether and when Defendants learned of the Data Breach and whether the response was adequate;

(i) whether Plaintiffs and other Class members are entitled to credit monitoring and other injunctive relief;

(j) whether Defendants provided timely notice of the Data Breach to Plaintiffs and Class members;

(k) whether, prior to the Data Breach, Defendants knew or should have known that their security systems were vulnerable to the type of cyber-attack that led to the Data Breach;

(l) whether Class members are entitled to compensatory damages, punitive damages, and/or statutory or civil penalties as a result of the Data Breach.

71. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common

questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this action as a class action.

72. Proper and sufficient notice of this action may be provided to the Class members through direct mail.

73. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be damaged by the unauthorized release of their PII.

## VI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of the California Consumer Privacy Act of 2018**
**[Cal. Civ. Code § 1798.150]**
**(Against All Defendants)**

74. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

75. Plaintiff and the Class members hereby seek relief under § 1798.150(a), including, but not limited to, (i) recovery of actual damages or damages in an amount not less than $100 and not greater than $750 per consumer per incident, whichever is greater, (ii) injunctive or declaratory relief, and (iii) any other relief the Court deems proper, including attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

76. Plaintiff and Class members also seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguards customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold customers' PII, including Plaintiff's and Class members' PII. These individuals have an interest in ensuring that their PII is reasonably protected.

77. Defendant is a company organized or operated for the profit or financial benefit of its owners with annual gross revenues over $26.4 billion. Defendant collected consumers' PII as defined in Cal. Civ. Code § 1798.140.

78. Defendant violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

79. Defendant collect consumers' personal information as defined in Cal. Civ. Code § 1798.140. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiff's and Class members' personal information, including unencrypted names and Social Security numbers, among other information, was subjected to unauthorized access and exfiltration, theft, or disclosure.

80. Plaintiff has served Defendant with a notice and opportunity to cure pursuant to Cal. Civ. Code §1798.150 by certified mail upon filing of this complaint.

81. Defendant has not responded to Plaintiff's Cal. Civ. Code §1798.150 letter. Specifically, Defendant failed to (i) provide an express written statement that the violations have been cured and that no further violations shall occur as required by § 1798.150; or (ii) "actually cure" its violation of Cal. Civ. Code §1798.150(a) within thirty days of Plaintiff's written notice of Defendants' violation of §1798.150(a). 84. Based on the foregoing, Plaintiff's claim for statutory damages under the CCPA is therefore proper.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of the California Privacy Rights Act**
**[Civil Code § 1798.100 *et seq*.]**
**(Against All Defendants)**

82. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

83. The CPRA expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened

security measures, and limit data retention.

84. Defendant failed to comply with these enhanced obligations, including but not limited to: (a) inadequate transparency regarding their data collection, storage, and use practices; (b) retaining personal information longer than necessary; and (c) failing to limit use and disclosure of sensitive personal data.

85. As a result of Defendants' non-compliance as outlined above, Plaintiff and the Class's personal information were compromised.

86. Plaintiff seeks available statutory remedies, including but not limited to statutory and actual damages, injunctive relief, and attorney's fees and costs.

**THIRD CAUSE OF ACTION**
**Violations of the California Unfair Competition Law,**
**[Cal. Bus. & Prof. Code §17200, *et seq.*]**
**(Against All Defendants)**

87. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

88. Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.

89. Defendants engaged in unlawful acts and practices by maintaining sub-standard security practices and procedures as described herein, by soliciting, collecting, and profiting from Plaintiff's and Class members' PII knowing that it would not be adequately protected, and by storing Plaintiff's and Class members' PII in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendants to implement and maintain reasonable security procedures and practices to safeguard the PII of Plaintiff and the Class.

90. In addition, Defendants engaged in unlawful acts and practices by failing to disclose the Data Breach to the Plaintiff and the Class in a timely and accurate manner contrary to the duties imposed by Cal. Civ. Code §1798.82.

91. As alleged herein, Defendants engaged in negligence, among other unfair acts and practices. Plaintiff and Class members were directly and proximately harmed in several ways as a result of Defendants' unlawful and/or unfair conduct and are entitled to all available injunctive relief, including but not limited to an order mandating Defendants to (i) implement reasonable

security measures to protect its customers' PII and (ii) provide free credit monitoring to customers affected by the Data Breach.

92. California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

93. Plaintiff and the Class, as customers and policyholders who maintained accounts with Farmers Insurance, accessed Defendant's systems and entrusted Defendant with their personal and insurance-related information and have suffered injury in fact and have lost money or property as a result of the unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue, or misleading advertising.

94. The acts and practices described above violate 16 CFR 1632.31 for failing to properly disclose how it will handle the Class's PII and therefore satisfy and violate the "unlawful" prong of § 17200.

95. The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

96. As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of millions of dollars in ill-gotten gains from the unauthorized access of Plaintiff's and the Class's accounts, obtained largely as a result of the acts and omissions described herein.

97. Plaintiff, pursuant to California Business & Professions Code § 17203, seeks an order of this court compelling the Defendants to provide restitutionary disgorgement and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendants:

A. A determination that this action is a proper class action under Code of Civil Procedure §382, certifying Plaintiff as Class representatives, and appointing the undersigned counsel as Class counsel;

B. An award of compensatory damages, punitive damages, statutory and civil penalties to Plaintiff and the Class as warranted by the CCPA, CPRA, UCL, and other applicable law;

C. Injunctive or other equitable relief that directs Defendants to provide Plaintiff and the Class with free credit monitoring beyond 12 months and to implement reasonable security procedures and practices to protect customers' PII that conform to relevant federal and state guidelines and industry norms;

D. Declaratory judgement in favor of Plaintiff determining that Defendants' failure to implement reasonable security measures violates the CCPA and the CPRA;

E. An award of reasonable costs and expenses incurred in prosecuting this action, including attorneys' fees and expert fees pursuant to Cal. Code Civ. P. § 1021.5; and

F. Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff and the Class demand a trial by jury on all issues so triable as a matter of right.

Dated: February 4, 2026

**POTTER HANDY LLP**

/s/ James M. Treglio

By: ______________________________

Mark D. Potter, Esq.
James M. Treglio, Esq.
Isabel Rose Masanque, Esq.
Attorneys for the Plaintiff and the Class